We'll now hear argument in Case 10-930, Ryan v. Gonzales.  General Horne, Mr. Chief Justice, and may it please the Court, I'd like to start picking up on a question asked by Justice Ginsburg on the Reese case. The Reese case is pre-AEDPA. If there's one thing that Congress had in mind when it passed AEDPA, the Anti-Terrorism and Effective Death Penalty Act, it is that the death penalty process needs to be speeded up, and habeas should not result in undue delays to give effect. Scalia You don't think that AEDPA would alter the outcome of Reese? You think Reese would come out the other way after AEDPA? General Horne Well, I think that Reese didn't really deal with our issue, which is competence to aid counsel. Scalia Yeah, that's a different point. General Horne Yes, I agree, Your Honor. But I thought it would be relevant to point out that it was pre-AEDPA. And then on that point, this Court has said several times that habeas should not be used to grant indefinite stays. In fact, even pre-AEDPA in the Barefoot case, this Court said that habeas is not a time to retry a case, and even less is it a time to grant indefinite stays. So the sentence with even less followed the sentence with not. So it was even less than not that it should grant permanent stays. Sotomayor Tell me how you define indefinite stays, meaning, are you okay with the 6 months to a year stay for a court to try to get someone back to competence, assuming that there is a claim in which the defendant's information is necessary? General Horne Yes, Your Honor. We agree with the Ohio position. In the American Psychiatric Brief, I think it's page 10, note 20, they said that up to 90 percent of the cases are solved in 6 to 9 months. And I think that if this Court set a standard of no more than a year for the successive stays, that would give some guidance to the courts. Sotomayor So how do you deal with Justice Kagan's earlier question of what difference does it make if the person is still necessary or the information, potential information is still necessary, what makes it unnecessary after a year? General Horne Because I think the consequence of AEDPA is that a balance has to be drawn between the fact that there has to be finality. In fact, this Court has said the purposes of AEDPA include finality, comity, federalism, and reduction of delays in death sentence cases. There needs to be a balance between that and the need to have a competent defendant if we can have one in a case where the testimony is necessary. This Court has said several times, I was going to mention also the Hines case where this Court, I think, said very clearly that stays cannot be indefinite. So I think it would be very helpful for this Court to give a guideline to the courts and say the way to balance this is that if they get the time in which 90 percent of the cases are solved. Sotomayor Those cases didn't establish a limit on how long States needed to take to adjudicate claims. They just said a district court should put in conditions that move things along. That required defendants to press their claims within a reasonable time, that required periodic updates, that required monitoring by the court, but it didn't set an artificial end time. It just said you can't just do an open-ended stay and not give conditions to comply with. Why should this be treated differently? Verrilli, Your Honor, we think it would be helpful, and we agree with Ohio on this, we think it would be helpful if the Court gave some kind of a standard so that there would be some guidance and uniformity, and so that courts did not get around this Court's efforts. Kennedy How would you define that standard? What standard do you suggest? Verrilli, Your Honor, the standard we would suggest would be that 6 to 9 months would be the standard, and certainly no more than a year, that it would be in months and not years, including not just the first day, but any successive stays. In all cases where a stay was appropriate. Now, in the record-based case, no stay is appropriate. Breyer What if the — it might be unusual, but you can't try a person who's not competent. You can't try him. Verrilli, Your Honor. Breyer So what about a — and now he's been tried and he's been convicted and been appealed and gone through the procedures. But some case could arise where in habeas, they've made like a prima facie showing or a — convinced the judge that there really is a very good chance here or maybe even I think it's probable that the basic trial was unfair to the point where it's like not having a trial. What about in that situation, if it ever arises? I mean, should we leave the door open just for that possibility? Verrilli, Your Honor, I think the answer to that is no, Your Honor, because the assumption — once the conviction has occurred, the presumptions shift. In the criminal trial, all the presumptions are in favor of the defendant. The case has to — the State has to prove it. Breyer I have that. That's why I put in the possibility that on the basis of what's presented to me, the judge, I think I have so much without this defendant's testimony here suggesting it was unfair, that maybe the presumption should shift back. That's what's worrying me in the back of my mind, that there could be such a case. There have been in history. Verrilli, Your Honor, well, this Court said in Daniels that the presumption is that the conviction was valid, and it becomes the burden of the Petitioner to overturn that, the burden of the prisoner to overturn that. If she can't do it. Sotomayor If there's a time limit, the 6 to 9 months, at what point does it begin to run? Does it begin to run at the time when the Petitioner moves for a stay, even if no effort was made prior to that to restore the Petitioner to competency? Verrilli, Your Honor, I would believe the time would begin to run with the treatment, because the basis for the 6 to 9 months was what was in the amicus brief against us by the American Psychiatric Association, indicating that in 6 to 9 months, almost 90 percent of the cases are cured. So we needed to have some basis to suggest a standard to the Court. Alito No, but my question is this. Suppose that no effort has been made by counsel to provide, to obtain treatment for the Petitioner, to restore the Petitioner to competency prior to the point when a motion is made to stay the proceeding, the 6-to-month period would still begin to run at the time when the motion for the stay is made, or would it begin to run at some earlier point or some later point? Verrilli, Your Honor, I would think if the motion is made and the other requirements are shown, that the prisoner's testimony is essential, then, and that it's not a record-based case, then I would think the 6 to 9 months would begin to run when treatment begins, because that's our basis for the standard we're suggesting. Roberts, When treatment begins after some sort of initial hearing, right? Verrilli, That's correct, Your Honor. If the Court grants the motion for the temporary stay, and presumably treatment would begin right away, or perhaps treatment has been ongoing, but from that point on, we suggest a 6 to 9 months standard. Ginsburg, In which cases would you say the defendant's ability to assist counsel is necessary? On what issues? You say that if assistance has to be necessary to a fair adjudication. Verrilli, Yes, Your Honor. Ginsburg, In what cases would that be so? Verrilli, We have difficulty coming up with cases at that stage of the proceeding, Your Honor, because presumably the information the prisoner would have would be known to others, especially if it's duly discovered evidence. That would typically be from outside, such as somebody admitting to the crime, DNA evidence, something of that sort. It appears to us highly unlikely that the prisoner has information that he didn't disclose earlier when he was competent in the State proceedings and in the post-conviction proceedings at the State level. So we think it would be a very rare case, Your Honor. But we are prepared to admit that if a showing were made that his testimony is necessary, that a 6- to 9-month temporary stay be granted, as long as it's not too late. Roberts I don't mean to be nitpicking, but why is it 6- to 9-months? 8 months, I mean, why isn't it 6 months or 9 months? I don't understand why there's. Verrilli, We had to find something to suggest to the Court, and so we took it out of the. Roberts So 6 months or 9 months? What does it mean to be 6- to 9-months? Verrilli, I agree, Your Honor. It should be 9 months, because that's the point at which the American Psychiatric Association says almost 90 percent of the cases are solved. Kennedy And if it isn't solved after 9 months, then what? Verrilli, If competency cannot be restored. Verrilli, Correct, Your Honor. Then the case proceeds, which was the? Kennedy Based on the record. Verrilli, Based on the record. Well, if it's record-based, there should be no continuance at all. Scalia I don't really understand why the American Psychiatric Association said 6- to 9-months, too. I mean, 90 percent are cured within 9 months, right? Verrilli, Yes, Your Honor. That's correct.  I don't think that's a non sequitur, it seems to me. Verrilli, No, we don't, Your Honor. We're just suggesting there should be a guideline, and we had to find some basis for the guideline. Scalia They're not lawyers, right? They're psychiatrists. Verrilli, That's correct, Your Honor. Alito Well, what happens if, after 9 months, mental health experts come in and they say there's a 90 percent chance of restoring the Petitioner to competency in another 9 months, or another 3 months, or another month? Verrilli, Your Honor, we're suggesting that the Court should draw a line. To guide the other courts, so that, because once you allow one additional period, there can be successive additional periods, and then it becomes an indefinite stay. Breyer Why? I mean, sorry, I didn't mean to say that particular time. But I mean, trial judges run their trials. You know, that's what they're hired for. And once we make it clear it shouldn't go on forever, and why can't we trust them to do their job? Verrilli, Well, this Court in Hines said that pre-AEDPA, the courts had discretion to grant stays, but AEDPA circumscribes that discretion. And so I think this Court needs to give guidance to the courts as to how to do that. Breyer It shouldn't be indefinite. The object of this is you're trying to give, like you would with any witness who's not around at the moment, you're trying to produce a hearing that will reach a result with this witness. And if you think after a reasonable period of time that witness will recover and be available, fine. And if there's no hope of that, forget it. I mean, you know, something like that. Verrilli, I understand, Your Honor. Our suggestion is that the Court give a guideline. I understand Your Honor's position. I do want to save some time for rebuttal. I just want to make one quick point about the witness has to be essential to the case being made. It was suggested in the Ohio case that if there were a possibility that he could be helpful, that that would be sufficient. But the American Psychiatric Association and the ABA both agree that there has to be a particularized and substantial case made that the witness is necessary, or they also use the word essential or necessary. And we think that that standard should prevail. I'd like to reserve time for rebuttal. Thank you, General. Thank you. Ms. O'Connell. Mr. Chief Justice, and may it please the Court. The United States agrees with Ohio and Arizona on the general framework for when no stay is allowed and for when a limited stay is allowed in Federal post-conviction proceedings. I'd like to provide the Court with a practical example of how a limited stay might work, since that seems to have been of some concern. An analogous Federal statute is 18 U.S.C. section 4241, the Federal competency hearing statute that the Court cited or provided a CF citation to in Reese. That provides the framework for how a district court determines competency for a prisoner to stand trial and could provide a framework for how a district court should proceed with competency hearing in a case where it would be appropriate. Under section 4241, the criminal defendant, if he is found incompetent, the district court may give an initial period of up to four months for him to be treated to determine whether he can come back to competency. If he cannot regain his competency at the end of that four-month period, then the court can grant an additional reasonable extension of that time if the doctors say that there is a reasonable probability that this prisoner can be restored to competence. That could provide a framework, if that's what this Court is looking to do, for showing district courts how they could enter a limited stay. Scalia What's a reasonable extension? Another four months? Six months? Right. I think we agree on the outer end that Scalia I was with you. It seemed to me you had something really, really clear and solid until you said reasonable extension. O'Connell Well, but this is what district courts do. They do it whenever a competency motion is filed in a Federal criminal trial. And we agree with the outside limit of about a year. It depends on the interest at stake, the interest at stake in the State in proceeding with its judgment and the interest in finality, and whether the doctors think that there's actually a chance that this prisoner could be restored to competence if they work a little harder. If the evidence is crucial or necessary or there's some indication that we want to work hard to get this information from the prisoner, we would go for a little bit longer. But at some point, that attempt to restore the prisoner to competency has to end and the proceeding should move forward based on the best evidence that's available. Kagan But, Ms. O'Connell, where does that outer limit come from? You suggested looking to that statute as an analogy, but there would be no outer limit in application of that statute, would there? O'Connell There's not. But at some point we do give up. And the district courts have discretion to determine how long that would be. And, again, we propose an outer limit of about a year. But it's up to the district court in that particular circumstance to see how hard they want to work to try to get that evidence into the proceeding. Scalia Is that any different from what the defendants are arguing here? O'Connell Well — Scalia They're saying, you know, give a temporary stay and extend it as long as you need to. So you're taking their position? O'Connell No. The difference between our position and that position is that if, after a reasonable period of time, the prisoner cannot be restored to competence, the claim should move forward without him, using the best evidence that's available. That's because when we arrive at post-conviction proceedings, we have a conviction and a sentence that have been affirmed on direct appeal and are presumed to be valid. And although it's a valid consideration for the district court to take into account whether the prisoner is competent and could assist his counsel has a role in these proceedings, there's no right for the prisoner to be competent during the post-conviction proceedings. Roberts You said shortly, after a reasonable period of time. I thought you were saying after a year. I think it's some guidance to say no more than a year. It's really no guidance to say after a reasonable time. O'Connell Yeah. We think the outer limit should be presumptively about a year. It's not to say that the United States isn't. Ginsburg But you're talking about a very narrow range of cases, because I take it your principal position is it would be unusual that the defendant needs to be competent in order for the lawyer, effectively, to represent him on habeas. So under what circumstances do you think competency matters so that the lawyer should not be expected to go on without a competent client? O'Connell Justice Ginsburg, we think that it would not be an abuse of discretion for the district court to allow the defendant to try to regain his competence and help his lawyer with the proceedings if there is some opportunity for him to present evidence or to present new claims in his proceeding. That may be the case. It will often be the case for a section 2255 petitioner. It is his first round of Federal post-conviction proceedings. It may be his first opportunity to present an ineffective assistance of counsel claim. And in those circumstances, if he has something that — if the lawyer has something that he wants the prisoner's assistance with or may need testimony from the prisoner, we think the district court has discretion to allow a stay, a limited stay, to allow the prisoner to regain his competence. But it's not limited to cases where the review is restricted to the record. Right. In those cases, we think that no stay is appropriate, that it would be an abuse of discretion to enter a stay. AEDPA doesn't tolerate delay without a justification. And if it's a record-based claim, like a State prisoner where he's barred by section 2254D in Pinholster from bringing in new evidence and that the review is strictly limited to the State court record, then there's no role for the prisoner to play, and it would be an abuse of discretion for the district court to stay the proceedings in an effort to bring him back. What is the standard when the district court is deciding whether to stay the proceedings? We've heard a number of implausible basis in the record, truly plausible, Iqbal. Which — which — what is the government's position on the appropriate standard? We — we think that the district court has discretion to grant a stay when the prisoner's participation could be — he could provide a useful source of evidence or guidance in the proceedings. Could? Yes. Your standard is could provide? Yes. In those circumstances, we don't think the district court would abuse its discretion by allowing him an opportunity to regain his competence. Could provide means might provide? Is that it? Might? Yes. Yes. So just a possibility. Right. That's all it takes. If there is an opportunity for this prisoner to present new claims or new evidence in his section 2255 proceeding, then we don't think it's an abuse of discretion for the district court to allow him that opportunity. But you cap it by saying as long as the discretion is not exercised for more than a year. That's right. We think it has to be just a limited stay. We — the United States would be opposed in any circumstances to a stay that's conditioned only on the prisoner's ability to regain his competence. At some point, if he can't, we move forward. Would that standard have been met in both of these cases, meaning Carter's claim, and the one that concerns me the most is why he was excluded from trial and what if he did or did not do with his attorneys afterwards. And Gonzales is a slightly different case. But would your position be that in both cases there was enough? Not just that there was enough, but that the Federal court would be prohibited from considering further information. No, no, no. My question was, on the facts of both of these cases, was there a basis for granting the stay with respect to their conditions? No. Because both of — all of the claims involved in these two cases are limited to the State court record and Federal post-conviction proceedings under Section 2254d and Penn-Holster. This prisoner could not provide any new evidence to his client that could be introduced at court or that could be relied on by the Federal court. Either Carter or Gonzales. That's right. Breyer. Why would we in this kind of case, as opposed to, say, some other case, where a witness is missing and it's crucial? The district court does have authority to grant stays, and we haven't said, but no longer than a year. Why do we say, but they do it in a reasonable time if they abuse their discretion? There's mandamus or there are other ways of controlling the discretion. Why are we suddenly here in this case imposing a fixed number of days? I mean, the reason, of course, that the Psychological Association says 6, not months to 9 months, is they have different studies. In some places it's 6 months, in some places it's 9 months. And so why are we picking a number out of a hat here when we don't elsewhere? The Court doesn't have to do that. We were suggesting a year as the outer limit just because that is sort of what the limit for when people will be restored to competency, if they are going to be able to be restored. But the Court doesn't have to set an outer limit. I mean, it, but what we are most concerned about is that it should be something like reasonable or don't abuse your discretion or, I mean, at the moment I'm just not seeing why this is different than 10,000 other kinds of instances where we set that kind of limit rather than days. Well, perhaps it isn't. But to go along with that analogy, if a different piece of evidence or a different witness were unavailable, we wouldn't allow the district court to hold up the proceedings indefinitely to wait for that witness. And so it should be no different. You don't mean to say, you're not suggesting that don't abuse your discretion is a limit, are you? Well, you know, if the Court wants to provide more, more guidance to district courts, I mean, we would say that about a year is how long it would take for a person to be in there. Ginsburg. But why should the Court do that? Why should it provide any guidance if, as you say, in both of these cases the review is limited to the record, and we would never get to the question of if it weren't reviewed, limited to the record, then what? That would be a perfectly appropriate, also a perfectly appropriate way to dispose of this case, to conclude that all of these claims were limited to the record and that it was an abuse of discretion to grant a stay in these cases. Thank you. Thank you, counsel. Ms. Marquez. Mr. Chief Justice, and may it please the Court. I'd like to begin by correcting a statement by the United States. Mr. Gonzales is not precluded by 2254d or pinholster. Mr. Gonzales has identified several ineffective assistance of counsel claims that would be right for review under this Court's decision in Martinez, and therefore would be available in district court, and we would also be able to present new evidence. Ms. Marquez, could you tell me, if it were the case that somebody was limited to the State court record, what's your best example of a case in which, nonetheless, a stay would be appropriate, in which, nonetheless, consultation with the client was necessary for a full and fair adjudication? Because I've been trying to think of examples, and, you know, I'm not doing very well, quite honestly. So what's your best one? Well, in our particular case, we raised several claims in habeas proceedings. We raised guilt claims, and we also raised sentencing claims. And it is often the case with our clients that, at their direction, they choose not to pursue or do not want to pursue sentencing claims, and want to only pursue guilt claims. So those are claims that are strictly on the record, and under the ABA guidelines, the client is the ultimate decision-maker as to where the particular representation is going. So that is a huge, all-encompassing decision that a client needs to make as to the ultimate outcome of his or her case. Sotomayor, that seems like almost a due process argument, that in every single case you have to grant a stay. You're parting from the Respondent and Carter, and you're making a broader argument. Well, no, Your Honor, that's just an example of where, if there is a client in that particular situation. No incompetent client, presumably, can help you make those decisions. So tell me, are you saying that in every single case the client entitled to a stay? No, Your Honor, we're not saying that in every single case. So why does that situation give you an entitlement if it's not in every single case? That situation goes with the ABA guidelines and what an attorney's duties are to maintain communication with the client, and that's just about one reason why we need a competent client. But to answer your question. Excuse me. If the client is incompetent, you bring both claims, right? You both challenge the guilt and you challenge the sentence. That is if a client is incompetent. I suppose that's if we were forced to do so. So why is it unfair to prevent, to stop everything so that the client can tell you not to bring one of those things? I don't know why. That's unfair. That's just about one reason why we would need a client. But to answer Justice Kagan's question, there are several claims, ineffective assistance at counsel claims, are necessary for us to be able to talk to our client, and especially in this case where there was an antagonistic relationship between the client and the trial lawyer, that would put the situation in context and we would be able to identify those facts. Why couldn't you use the transcript? Everything, all the exchanges between the defendant and the trial judge are in the transcript. Well, the transcripts are available, but there are situations that are not transcribed. In ineffective assistance at counsel claims, the interactions between the lawyer and the client at the prison, at the jail. But you can't get that in, right? I mean, aren't you limited to the record? So what use is it to find out these little, little secret things that your client knows if they cannot be admitted? Well, as this Court held in Pinholster, not all Federal habeas claims fall within the scope of 2254d. And there are situations where we would be granted an evidentiary hearing. In this particular case, we have not yet been briefed our 2254d claims. We are at the stage where we're going to brief merits claims. And in addition to that, we are going to brief evidentiary development in this case, where we would have to assert what facts need to be developed and also the diligence standard. Sotomayor, what in the record could plausibly, certainly be seen that would suggest that your defendant has information that could be valid? Assume it's not the ABA standard, but the plausibility standard or the certainty standard or something. Well, there was information in the record that the trial judge and our client had an antagonistic relationship. And there was comments, the trial prosecutor was interviewed or said on the record that the judge and the defendant, Mr. Gonzales, snarled and snapped at each other. Well, that you can see from the record. Right. What would plausibly give rise to a belief that there was some ex parte exchange between the judge and the defendant? Is there anything to suggest that in the record? Well, we would suggest that the actual relationship itself, we would have to know where this relationship went awry or why it is that Mr. Gonzales and the trial judge were basically at each other's throats. The intent of the attempts to snarl and snap at each other was that there was an ex parte exchange that would account for that snarling. We currently have not been able to get that information from our client, as to sit down with our client and say what happened in this situation. Ginsburg. The district judge in this case explained why he concluded that there was no issue that couldn't be fairly adjudicated on the basis of the record. What was wrong with his explanation? He looked at the case carefully and he said, there's nothing that can't fairly be adjudicated on the record. First, initially, the district court judge agreed with Mr. Gonzales that there was a need for Mr. Gonzales to be competent at his habeas proceeding. And we actually began a course of a competency determination. And that is a longer record. Also, our client went into and was treated at the state mental hospital. However, we believe the district court judge was in error when he made that finding. The trial judge did not have, or the district court judge did not have all the evidence before it when the district court looked at the particular claims. We were just asked to identify. We did not put forward a complete briefing on that issue. And the judge decided it just on a motion. Roberts If we think it's necessary to set some objective limit on how long an inherent authority could be exercised, is there any reason to adopt any limit other than the one that the psychiatrists have suggested, which is, I gather, most people, if they're going to, will recover competence within 9 months? Excuse me, Your Honor. No, we the year or 6 months, just by listening to the questions from the court, seems to be problematic. We suggest that this is all within the district court's discretion. Roberts So if we're looking for a little more guidance than that and feel the need for an objective standard other than abuse of discretion, you don't have any number that has any basis in psychiatric evidence or anything else besides the 9 months? Well, Your Honor, we would suggest that the court look to this decision in Rines, where my answer is we can look at a year and possibly if the client is not competent at the end of that year, then explore other options such as an ex-friend or perhaps proceeding. But what we would do is direct the court to this court's decision in Rines, where stays, where district courts are allowed to stay proceedings so that the Petitioner could go back to state court and exhaust. And in that decision, the court was specific as to guidelines for the district court to assert its discretion. 30-day updates, make sure that clients are not, are not being dilatory in seeking these stays and so forth. And the, and there has not been a problem with Rines stays. The district courts have been able to handle those stays. Sotomayor Counsel, in this case, the district court denied a stay. If this is an equitable power, how can you be comfortable that the Ninth Circuit as an appellate court overrode the district court's equitable discretion? We believe that the district court was, abused its discretion, but first did not apply the correct standard, which is essential communication. The district court erroneously decided that Mr. Gonzales was not essential or his communication was not essential to the proceedings. Sotomayor But you're not claiming that that issue is always in the district court's hands to start with? Yes, Your Honor. So please identify for me what, how we establish or set a standard so that appellate courts are not overriding that at whim. Well, we would, we would urge the court to adopt the district court or the Ninth Circuit as an appellate court to first have a finding of competency and then a determination of whether that client's communication is essential to the proceedings. Oh, you're flipping it. You're saying first, you give a stay for competence, you've determined competency first and not essentiality first? Well, that's how the cases are, are being raised. Always there is a question of competency, and then the courts are looking to whether or not there is essentiality. I would also like to address the argument that the AEDPA somehow or AEDPA somehow forecloses any types of stays. Congress recognized the need for finality to be balanced against a firm regard for due process and full constitutional protections. So we are going to do that. Nobody, as I hear things today, no one is arguing that it prevents any kind of stay today, right? I would, I would just, I was just letting the court know that the AEDPA does not foreclose stays. I thought I heard. No, I didn't understand. I thought everybody was focusing on limitation on stays. And surely AEDPA is pertinent when it comes to recognizing the need for those limits, right? Exactly, Your Honor. Also, I would like to address the, the court's or the government's concern as to whether or not these cases or Rohan decisions would open the floodgates to district court stays. The, we've pointed out in our briefs on page 32, 33, the, the few just stays that have actually been granted. The district courts have been handling these, these motions and unless there's any further questions. Well, if there, if the court were to point to some guideline as to the maximum length or the presumptive maximum length of the stay, what, because that's the period within which there's a good chance in most cases of restoring the Petitioner to competency. At what point would that begin to run? Would there be any obligation to begin the treatment prior to the, the time when the motion for a stay is, is filed? You know, could many years go by with the same attorney representing a client and then at the very last minute, and no effort is made to obtain treatment that would restore the Petitioner to competency, and then at the very last minute a motion to make, a motion for a stay is entered and, and then this period of time, 6 months, 9 months, a year, whatever it is, would begin to run? I believe there's an obligation for counsel to continue to try to effectively communicate with this client. And once that attorney gets to a point where that incapacity forestalls that attorney from being able to move forward on his case, then that attorney is at that point under a duty to raise this claim with the district court. Kennedy, what is the underduty to raise it as soon as possible at the risk of forfeiture if he doesn't? That's the import of the question. Well, that's, that's the million-dollar question. I would think that's why I'm asking. I think the ABA guidelines and ethical duties guide attorneys to, to make that decision. And yes, I'm sorry, if there is dilatory action on the part of the attorney, that is something for the district court to consider in issuing that stay. Well, here the, the motion, when was the motion made, the motion for a competency determination on a stay? The motion in this case was made when we, the stay was lifted in district court and we were ordered to do, to do merits briefing. And when was that? Do you remember the date roughly? That, that was in 2000, February 2006. And when was the initial habeas petition filed in district court? It was filed in July 2000. Of 2000? Yes. So why wasn't there, there was no obligation to do anything between 2000 and 2006? The counsel was attempting to communicate with the, with Mr. Gonzales the entire time. At that point, the case was stayed in district court for Rines and Ring and Summerlin determinations. And It was only after six years of being unable to communicate with him that the attorney said maybe there's a competency problem here? No. We, we were having difficulty with the client the entire time since we started, since we first got on the case. And after, and we just thought he was a difficult client. And after we, we filed the amended petition, which was basically a, a notice pleading, the, within a month of that, we first got in contact with mental health experts saying there's something wrong with this guy and sought to put together his mental health history. At that point, Mr. Gonzales was back in state court exhausting issues and raising Ring claims. In, in that court, because we were stayed in district court, in that court, the district court, his post-conviction counsel raised ineffective assistance, I'm sorry, competency issues. And it was a, it was a incompetency to assist in post-conviction, state post-conviction. And that claim was denied. So did, did he begin treatment prior to the district court order on federal habeas? No. It was not until the district court order, or actually, the district court ordered that he be brought back to, or transported to the state mental hospital. And there he was to be evaluated to finally determine competency. And while there, he was, he was treated. And while he was being treated, he was starting to regain competency, at least to some extent. Then treatment stopped. Treatment stopped because he, he said there were side effects? Because he had back pain. And then we began briefing on what the course of treatment should be, if any. Well, so how, what is this 9 months or 1 year, the amount of time he's under treatment or the amount of time from the district court determination? I believe he was at the state mental hospital for about 6 months. And he was being evaluated. And as, inadvertently then, the state mental hospital began treatment. Sotomayor And the million dollar question. Assume we say you have to spend a reasonable time trying to get someone to competence. And here there appears to have been efforts to do so. And your client is saying, I can't be treated because the drugs make me sick. So when does all of this end? Well, first, our client did not say he couldn't be treated because, that he couldn't be treated. It was just these specific drugs. And we were on a course of, of trying to figure out what if any other regimen was available. And we believe that it is within the district court's. Well, that time has passed by now, hasn't it? Did that, they stopped treating him? They, they quickly transported him back to DOC. And he's not being treated currently. No one's continuing to monitor him or try to treat him? No, Your Honor. And we are, we do not have, he will not see us. And we do not have access to medical records because we do not have a current release. And the district court did not grant us an order to get those records on a consistent basis. So we have no access to our client whatsoever. I'm not sure why. I'm, I'm a little confused as to. I think the Ninth Circuit remanded so that treatment could be had. So why has it stopped? Well, we haven't moved forward in, in district court. We've been here appealing the decision, or the State has appealed the decision. Thank you, counsel. General Horne, you have three minutes remaining. Thank you, Your Honor. I, I need to disagree with the Solicitor General on one point about the standard. The, the standard has to be essentiality. The, the witness has to be essential. In fact, you heard my friend representing Gonzales emphasize essentiality. And it was emphasized in their, in their responsive brief at pages 1, 2, 9, 10, 11, 12, 21, 30, and 39. On all those pages, they said the witness's testimony must be essential. General, could I ask you, you've been arguing on two different axes. One is how tight the standard should be to grant any stay at all. And the other is what limits there should be on how long a stay can be if a stay is warranted. And I'm just curious, if I forced you to prioritize in terms of the State's interests in effective habeas adjudication, which is more important? You know, cranking up the standard or making sure that there's a time limit in place? Well, I, I think the, the, the first, the first priority is that there should be no indefinite stay, and the second priority is that there should be no stay in a records-based case. Those are the two prongs of the Ninth Circuit decision, which would- But ordered in that way, that for you the time limit is the more important? The time limit is, is crucial. But I have to say no stay in a records-based case is a matter of pretty clear law. Yes, I know, but I really, I said, if I forced you to prioritize between the two. I would say it can't be indefinite. That would be the first priority. But, but I think it's also clear from this Court's very definite statements in a number of cases that, that there cannot be a stay in a records-based case. Now, the- Opposing counsel said that there's an exception for ineffective assistance of counsel under our decision in Martinez. Your Honor, in this case, the district judge specifically found that there's no possibility for a case of ineffective assistance of counsel, that those were waived by the, by the, when the case was sent back to the State for additional post-conviction relief proceedings, that claim was waived. It's in the district court's order, Appendices B and C to our, to our petition. And even the Ninth Circuit didn't argue that. The Ninth Circuit argued that there was an issue as to whether there was prejudice by the judge. But there's a very detailed analysis, again in the district court's order, showing that every time that claim was made, and was made a number of times in the State for additional post-conviction relief proceedings, it was clear that those were on-the-record comments, there was nothing secret, there was nothing ex parte, those were on-the-record discussions that were being complained about. And the district court judge found that if there was something secret, then those have been waived by the, by the Petitioner because he didn't bring it up in the numerous case times that it came up at the State level and he was talking only about on-the-record comments by the trial judge. Thank you, General, Counsel. The two cases are submitted.